UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS MULLER,<br><br>*Plaintiff,*<br><br>v.<br><br>NYC MOTORCARS OF FREEPORT CORP.<br>and TEACHERS FEDERAL CREDIT UNION,<br><br>*Defendants.* | Civil Action No: 2:20-cv-1497<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.  Plaintiff, Thomas Muller, ("Muller" or "Plaintiff"), brings this action to secure redress against unlawful lending and business practices engaged in by defendants, NYC Motorcars of Freeport Corp. (the "Dealership") and Teachers Federal Credit Union ("TFCU" and together with the Dealership, the "Defendants") relating to an automobile sale transaction.

2.  In this action Plaintiff seeks, among other things, injunctive relief, declaratory relief, and actual, statutory, treble, and punitive damages against Defendants for, *inter alia*, violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA") and its implementing regulations, 12 C.F.R. §1026 *et. seq.* ("Regulation Z"), the New York Motor Vehicle Retail Instalment Sales Act, N.Y.P.P.L. § 301 *et. seq.* ("MVRISA"), New York General Business Law § 349 and § 350, and for common law fraud.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction pursuant to 15 U.S.C. § 1640 (TILA) and 28 U.S.C. § 1337.

4.  This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

5. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and Defendants maintain offices, transact business, and are otherwise found in this district.

## THE PARTIES

7. Plaintiff is, and at all relevant times has been, a resident of West Islip, New York.

8. Upon information and belief, the Dealership is or was a New York Corporation doing business at 415 W Sunrise Hwy, Freeport, NY 11520.

9. Upon information and belief, TFCU is a Federal Credit Union existing under the laws of the United States and doing business at 102 Motor Parkway, Hauppauge, NY 11788.

## FACTS

10. This dispute arises from the Dealership's sale to Plaintiff of a used, 2016 Ford Explorer XLT, VIN# 1FM5K8D83GGA68367 (the "Vehicle").

11. On or before April 3, 2019, Plaintiff discovered the Vehicle advertised on the Dealership's website for $21,999.00.

12. In reliance on the Dealership's representations of the Vehicle's advertised price, Plaintiff on April 3, 2019 went to the Dealership's showroom intending to purchase the Vehicle.

13. Plaintiff ultimately agreed to purchase the Vehicle from the Dealership and understood the sale price, including warranties, to be $21,999.00.

14. Despite its representations that the $21,999 sale price included warranties, the Dealership purported to sell to Plaintiff another "warranty," which upon information and belief was not real, for an additional $4,500 together with applicable tax (the "Warranty").

15. The Vehicle purchase price listed on the Warranty was "$25,880.00".

16. Plaintiff was told by the Dealership's "Finance Manager" that the $25,880.00 price listed on the Warranty was the "full price" he was being charged for the Vehicle, including the cost of the Warranty and all other options.

17. Because the Dealership's computers supposedly were "down" during the sale of the Vehicle, the Dealership required Plaintiff to sign a "Used Vehicle Invoice" on an electronic tablet.

18. Plaintiff was not allowed to review the Used Vehicle Invoice presented to him on an electronic tablet, and a hard copy of the Used Vehicle Invoice was not provided to him.

19. Put differently, Plaintiff signed the digital tablet but was not able, either via a computer monitor, hard copy or otherwise to view any of the terms of the invoice to which his signature was to be affixed.

20. Because he was not given an opportunity to review the Used Vehicle Invoice, Plaintiff was unaware that the price of the Vehicle listed on the Used Vehicle Invoice was $29,435.00.

21. It was also unknown to Plaintiff that the $4,500 cost of the bogus warranty, additional fees, and other charges on the Used Vehicle Invoice brought the total price of the Vehicle to $36,854.27.

22. Unaware the Dealership had so dramatically inflated the price of the Vehicle, Plaintiff agreed to make a down payment of $12,000.00.

23. Acting on behalf of the lender, TFCU, the Dealership prepared a "Loan Agreement" listing the "Total Sale Price" of the Vehicle, including interest, as $39,869.76.

24. The Dealership's Finance Manager, who prepared the Loan Agreement on behalf of TFCU, told Plaintiff not to "worry" about the $39,869.76 figure listed on the Loan Agreement, because that was only a "suggested price" that had no bearing on Plaintiff's deal.

25. The Finance Manager's representation about the $39,876.76 figure on the Loan Agreement was false.

26. The Finance Manager falsely led Plaintiff to believe that the "full price" of the vehicle was $25,8880.00 and that his $12,000.00 down payment would be applied to reduce that amount.

27. In other words, Defendants used the finance process as a mechanism for adding significant undisclosed costs to the transaction.

28. Thus, whereas the Loan Agreement disclosed the "finance charge" being paid by Plaintiff as $3,015.49, the true costs incident to the extension of credit included an additional $10,974.27 of hidden charges added onto the transaction during the financing process.

29. These overcharges would not and could not have been applied in a cash transaction, where the cost of the vehicle, including the warranty would, of necessity have been fully disclosed and paid at the time of purchase.

30. Because TFCU charged Plaintiff an additional $10,974.27 incident to the extension of credit, *see* 15 U.S.C. § 1605(a), the transaction's finance charge was at least $13,989.76 (not $3,015.49).

31. Because the Loan Agreement materially understated the amount of the finance charge, it also materially underreported the "annual percentage rate."

32. The Loan Agreement is a TFCU form, and the Loan Agreement provides on its face that the underlying debt is initially payable to TFCU.

33. TFCU regularly extends consumer credit which is payable by agreement in more than four installments.

34. Plaintiff was not provided with a Bill of Sale, Retail Installment Contract, and/or other documents as required by various statutes and DMV Regulations.

35. At all relevant times Defendants acted willfully and in bad faith.

36. As a result of the misconduct set forth herein, Plaintiff has suffered pecuniary harm, damage to credit, emotional distress, sleeplessness, acute stress/anxiety, and pain and suffering. Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

**FIRST CAUSE OF ACTION**
**<u>VIOLATIONS OF TILA</u>**
(15 USC §§ 1601 *et seq.* against TFCU)

37. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

38. Plaintiff's transaction as described in this Complaint was a consumer credit transaction within the meaning of TILA and Federal Reserve Board Regulation Z.

39. TFCU regularly extends or offers to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

40. The Loan Agreement is a TFCU form, and the Loan Agreement provides on its face that the underlying debt is payable to TFCU.

41. TFCU is a "creditor" within the meaning of TILA and Regulation Z. *See* 15 U.S.C. § 1602(g)(1).

42. The Dealership and the Dealership's "Finance Manager" acted as TFCU's agent for purposes of consummating the Loan Agreement, and all statements made by the Dealership and/or the Dealership's "Finance Manger" during the transaction are imputed to TFCU.

43. The Loan Agreement lists a motor vehicle, an article of personal property, as collateral.

44. Plaintiff is a natural person, and the purchased the Vehicle for personal, family, or household purposes. Plaintiff is therefore a "consumer" for purposes of entitlement to all disclosures required by TILA and with regard to entitlement to the Act's protections. *See* 15 U.S.C. § 1602(i) (specifying attributes of a consumer credit transaction).

45. The Loan Agreement is a written agreement payable in more than four installments.

46. The finance charges as indicated in the Loan Agreement exceed $1,000.00.

47. The Loan Agreement is a contract in which TFCU, as a creditor, commits to sell a natural person property primarily for personal, family, or household purposes, in which the total amount financed is less than $50,000. Consequently, the Loan Agreement constitutes a non-exempt "credit sale" for purposes of 15 U.S.C. §§ 1602(h) and 1603(3).

48. The Loan Agreement is inconsistent with oral disclosures made by TFCU's agent an the date of the transaction.

49. In violation of TILA and Regulation Z, the Loan Agreement materially misstates the finance charge for this consumer credit transaction. *See* 15 U.S.C. § 1638(a)(3) (requiring disclosure of the finance charge in a consumer credit transaction).

50. The actual finance charge imposed by the Loan Agreement ($10,974.27) is more than $10 above the finance charge disclosed by the Loan Agreement ($3,015.49). As such, the

materially misstated finance charge disclosed in the Loan Agreement does not fall within the range of allowable tolerances for purposes of TILA's disclosure requirements. See 12 C.F.R. § 1026.18(d)(2).

51.     In violation of TILA and Regulation Z, the Loan Agreement materially misstates the APR for this consumer credit transaction. See 15 U.S.C. § 1638(a)(4) (requiring disclosure of a consumer credit transaction's APR).

52.     The actual APR imposed by the Loan Agreement exceeds by more than one-eighth of one percent the APR disclosed in the Loan Agreement. As such, the materially misstated APR disclosed in the Loan Agreement does not fall within the range of allowable tolerances for purposes of TILA's disclosure requirements. See 15 U.S.C. § 1606(c).

53.     For all these reasons, TFCU is liable under TILA and Regulation Z for statutory damages, actual damages, attorneys' fees, litigation expenses and costs, along with a declaratory judgment that it has violated TILA and Regulation Z.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF MVRISA**
(N.Y. Personal Property Law §§ 301 et. seq. against the Dealership)

54.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

55.     Plaintiff is a "retail buyer" within the meaning of MVRISA § 301(2).

56.     The Dealership is a "retailer seller" within the meaning of MVRISA §301(3).

57.     The transaction as described herein involved a "retail instalment sale" within the meaning of MVRISA § 301(4).

58.     Pursuant to § 302(5), MVRISA incorporates all TILA disclosure requirements.

59. As set forth above, the TILA disclosures provided to Mr. Muller were materially misstated.

60. Plaintiff was not provided a contract identified as a "Retail Installment Contract," in accordance with MVRISA § 302(2)(a), either at the time of the sale or at any subsequent time.

61. The "Notice To Buyer" disclosure required pursuant to MVRISA § 302(2)(c) was not provided at the time of sale or at any subsequent time.

62. Under MVRISA § 302(1) a motor vehicle retail installment contract is required to contain "all of the agreements" between the parties.

63. As set forth above, no document received by Plaintiff contained all of the agreements between the parties.

64. The Dealership's violations of MVRISA were willful.

65. For all of the reasons stated herein, under MVRISA § 307, Plaintiff is required to recover from the Dealership any credit service charge, delinquency, or collection charge he has paid as a result of this transaction.

66. Plaintiff is also entitled to injunctive relief barring the Dealership from henceforth violating MVRISA as set forth above.

**THIRD CAUSE OF ACTION**
**DECEPTIVE TRADE PRACTICES**
(N.Y. Gen. Bus. Law § 349(h) against the Dealership)

67. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

68. Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

69. To wit, wholly apart from any other violations of law recounted in this Complaint, the Dealership's acts and practices on behalf of themselves constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in this state, unlawful, independent of whether these acts and practices constitute violations of any other law.

70. These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

71. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

72. These false and deceptive consumer-oriented actions misrepresent the actual rights and obligations of consumers.

73. Specifically, upon information and belief, the Dealership routinely misrepresents the cost of automobiles for sale or lease, inducing customers to commit to purchase an automobile at a price that is later inflated through the sale of illusory warranties, phantom fees, and other charges, all of which hide the true cost of an automobile from members of the public.

74. Upon information and belief the Dealership routinely uses the digital signature process to hide the full cost of financed transactions from consumers.

75. These false and deceptive consumer-oriented actions and representations serve to convince consumers that they will be able to purchase or lease an automobile at a certain price, only to have that price drastically inflated after committing to purchase or lease the vehicle based on the Dealership's false representations.

76. Also, upon information and belief, the Dealership routinely misrepresents that its sales of automobiles are in compliance with applicable law, causing consumers to enter into transactions falsely believing that they have received all necessary disclosures and notices.

77. In actuality, as set forth in this Complaint, the Dealership's standard form contracts and other documents do not comply with New York law and do not contain the consumer notices and disclosures required by, among other things, MVRISA.

78. The Dealership's false and deceptive consumer-oriented actions result in Defendants receiving and retaining payments as the result of transactions into which consumers, and Plaintiff specifically, would not have entered if the true facts had been known.

79. The Dealership's conduct and statements described above are materially misleading.

80. As a result of these violations of NYGBL § 349, Plaintiff suffered and continues to suffer pecuniary and non-pecuniary harm.

81. The Dealership's violations were willful and knowing and committed in bad faith.

82. For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1,000, punitive damages, costs and reasonable attorney's fees pursuant to NYGBL §349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

## FOURTH CAUSE OF ACTION
## FALSE ADVERTISING
(N.Y. Gen. Bus. Law § 350 against the Dealership)

83. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

84. Under NYGBL § 350, "false advertising" means

advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

85. The Dealership's oral and written representations of the Vehicle's price, the features included within the price of the vehicle, and the contents of the Loan Agreement, Used Vehicle Invoice, and Warranty were materially misleading and constitute false advertising pursuant to NYGBL § 350.

86. The Dealership's false advertising was done knowingly and willfully and was committed in bad faith.

87. As a result of these violations of NYGBL § 350, Plaintiff – who would not have purchased the Vehicle but for the Dealership's false advertising – suffered actual damages as set forth herein.

88. For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), actual damages as set forth herein, three times the actual damages up to $1,000.00, punitive damages, and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
(Common Law Fraud against the Dealership)

89. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

90. As set forth above, the Dealership defrauded Plaintiff by, *inter alia*, overcharging Plaintiff for the Vehicle, and by having Plaintiff sign an electronic tablet and affixing his signature to a fraudulent contract Plaintiff never had an opportunity to review.

91. Upon information and belief, the Dealership intended to deceive Plaintiff.

92. Plaintiff believed and justifiably relied upon the Dealership's representations. Plaintiff had no reason to know or expect that the documents to which his signature was affixed listed the grossly overinflated and incorrect Vehicle purchase price and loan amount.

93. Had Defendants been truthful about the transaction's sales terms and the contents of the Loan Agreement, and had the Dealership not made these fraudulent misrepresentations, Plaintiff would have walked away and avoided the transaction entirely.

94. As a result of such reliance, Plaintiff sustained actual damages (including both pecuniary and non-pecuniary damages).

95. Moreover, the Dealership's conduct was egregious on every level, involving outright deception.

96. As a result of Plaintiff's reasonable reliance upon the Dealership's misrepresentations, Plaintiff is entitled to actual damages as set forth above, punitive damages, and costs.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in its favor and grant the following relief:

### *On the First Cause of Action - Violations of TILA:*

Judgment in favor of Plaintiff and against TFCU for violating the Truth in Lending Act and Regulation Z awarding (a) statutory damages, (b) actual damages, (c) costs, and (d) reasonable attorneys' fees;

### *On the Second Cause of Action - Violations of MVRISA:*

Declaratory judgment against the Dealership that it has violated MVRISA, entry of an order enjoining the Dealership from committing similar violations of MVRISA in the future, and awarding Plaintiff damages against the Dealership in

the amount of any credit service charge, delinquency, or collection charge Plaintiff has paid as a result of this transaction, as well as costs of the action;

***On the Third Cause of Action - Deceptive Trade Practices:***

Judgment in favor of Plaintiff and against the Dealership for actual damages, three times the actual damages up to $1,000.00, punitive damages, costs and reasonable attorneys' fees and declaratory judgment that the Dealership's acts and practices are deceptive;

***On the Fourth Cause of Action - False Advertising:***

Judgment in favor of Plaintiff and against the Dealership for injunctive relief, actual damages, three times the actual damages up to $1,000.00, punitive damages, costs and reasonable attorneys' fees, and declaratory judgment that Dealership has engaged in false advertising and such other or further relief as the Court deems appropriate;

***On the Fifth Cause of Action - Common Law Fraud:***

Judgment in favor of Plaintiff and against the Dealership for actual damages, exemplary and punitive damages, attorney's fees and costs.

***Any additional and further relief as may be deemed just and appropriate.***

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

March 20, 2020

>*/s/Daniel A. Schlanger*
>Daniel A. Schlanger
>Schlanger Law Group LLP
>9 East 40th Street, Suite 1300
>New York, NY 10016
>T: 212-500-6114
>F: 646-612-7996
>E: dschlanger@consumerprotection.net