UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS MULLER, <br><br> *Plaintiff,* <br><br> v. <br><br> NYC MOTORCARS OF FREEPORT CORP. and TEACHERS FEDERAL CREDIT UNION, <br><br> *Defendants.* | Civil Action No: 2:20-cv-01497 (JMA)(AYS) <br><br> **FIRST AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff, Thomas Muller ("Mr. Muller" or "Plaintiff"), brings this action to secure redress against unlawful lending and business practices engaged in by defendants, NYC Motorcars of Freeport Corp. (the "Dealership") and Teachers Federal Credit Union ("TFCU" and together with the Dealership, the "Defendants") relating to an automobile sale transaction.

2. In this action Plaintiff seeks, among other things, injunctive relief, declaratory relief, and actual, statutory, treble, and punitive damages against Defendants for, *inter alia*, violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and its implementing regulations, 12 C.F.R. § 1026 *et seq.* ("Regulation Z"), the New York Motor Vehicle Retail Instalment Sales Act, New York Personal Property Law § 301, *et seq.* ("MVRISA"), New York General Business Law §§ 349 and 350, and for common law fraud.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337.

4. This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

5. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and Defendants maintain offices, transact business, and are otherwise found in this district.

## THE PARTIES

7. Plaintiff is, and at all relevant times has been, a resident of West Islip, New York.

8. Upon information and belief, the Dealership is or was a New York Corporation doing business at 415 W Sunrise Hwy, Freeport, NY 11520.

9. Upon information and belief, TFCU is a Federal Credit Union existing under the laws of the United States and doing business at 102 Motor Parkway, Hauppauge, NY 11788.

10. As TCFU is the principle with the Dealership as its agent, all the actions of the Dealership alleged herein are fully imputable to TCFU.

11. In the alternative, pursuant to 16 CFR § 433.2, N.Y. Pers. Prop. Law § 302.9(a), and other applicable law, TCFU is subject to all claims which Plaintiff asserts against the Dealership.

## FACTS

12. This dispute arises from the Dealership's sale to Plaintiff of a used, 2016 Ford Explorer XLT, VIN# 1FM5K8D83GGA68367 (the "Vehicle").

13. On or before April 3, 2019, Plaintiff discovered the Vehicle advertised on the Dealership's website for $21,999.00.

14. In reliance on the Dealership's representations of the Vehicle's advertised price, Plaintiff, on April 3, 2019, went to the Dealership's showroom intending to purchase the Vehicle.

15. Plaintiff ultimately agreed to purchase the Vehicle from the Dealership and understood the sale price, including warranties, to be $21,999.00.

16. Despite its representations that the $21,999 sale price included warranties, the Dealership purported to sell to Plaintiff another "warranty" which, upon information and belief, was not real, for an additional $4,500 together with applicable tax (the "Warranty").

17. The Vehicle purchase price listed on the Warranty was "$25,880.00".

18. Plaintiff was told by the Dealership's "Finance Manager" that the $25,880.00 price listed on the Warranty was the "full price" he was being charged for the Vehicle, including the cost of the Warranty and all other options.

19. Because the Dealership's computers supposedly were "down" during the sale of the Vehicle, the Dealership required Plaintiff to sign a "Used Vehicle Invoice" on an electronic tablet.

20. Plaintiff was not allowed to review the Used Vehicle Invoice presented to him on an electronic tablet, and a hard copy of the Used Vehicle Invoice was not provided to him.

21. Put differently, Plaintiff signed the digital tablet but was not able, either via a computer monitor, hard copy, or otherwise, to view any of the terms of the invoice to which his signature was to be affixed.

22. Because he was not given an opportunity to review the Used Vehicle Invoice, Plaintiff was unaware that the price of the Vehicle listed on the Used Vehicle Invoice was $29,435.00.

23. It was also unknown to Plaintiff that the $4,500 cost of the bogus warranty, additional fees, and other charges on the Used Vehicle Invoice brought the total price of the Vehicle to $36,854.27.

24. Unaware the Dealership had so dramatically inflated the price of the Vehicle, Plaintiff agreed to make a down payment of $12,000.00.

25. Acting on behalf of the lender, TFCU, the Dealership prepared a "Loan Agreement" listing the "Total Sale Price" of the Vehicle, including interest, as $39,869.76.

26. The Dealership's Finance Manager, who prepared the Loan Agreement on behalf of TFCU, told Plaintiff not to "worry" about the $39,869.76 figure listed on the Loan Agreement, because that was only a "suggested price" that had no bearing on Plaintiff's deal.

27. The Finance Manager's representation about the $39,876.76 figure on the Loan Agreement was false.

28. The Finance Manager falsely led Plaintiff to believe that the "full price" of the Vehicle was $25,8880.00 and that his $12,000.00 down payment would be applied to reduce that amount.

29. In other words, Defendants used the finance process as a mechanism for adding significant undisclosed costs to the transaction.

30. Thus, whereas the Loan Agreement disclosed the "finance charge" being paid by Plaintiff as $3,015.49, the true costs incident to the extension of credit included an additional $10,974.27 of hidden charges added onto the transaction during the financing process.

31. These overcharges would not and could not have been applied in a cash transaction, where the cost of the vehicle, including the warranty would, of necessity, have been fully disclosed and paid at the time of purchase.

4

32. Because TFCU charged Plaintiff an additional $10,974.27 incidental to the extension of credit, the transaction's finance charge was at least $13,989.76 and not $3,015.49.

33. Because the Loan Agreement materially understated the amount of the finance charge, it also materially underreported the Annual Percentage Rate ("APR").

34. The Loan Agreement is a TFCU form and it provides, on its face, that the underlying debt is initially payable to TFCU.

35. Further, Plaintiff was not provided with a Bill of Sale, Retail Installment Contract, and/or other documents as required by various statutes and DMV Regulations.

36. At all relevant times Defendants acted willfully and in bad faith.

37. TFCU regularly extends consumer credit which is payable by agreement in more than four installments.

38. To the extent TCFU is not liable for the misconduct set forth herein, it is liable as an assignee (i.e. pursuant to the FTC Holder Rule, N.Y. Pers. Prop. Law § 302.9(a), or other applicable law) and/or agency principles. Aspects of this relationship are memorialized in the "Dealer Agreement" between Defendants.

39. As a result of the misconduct set forth herein, Plaintiff has suffered pecuniary harm, damage to credit, emotional distress, sleeplessness, acute stress/anxiety, and pain and suffering. Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

## FIRST CAUSE OF ACTION
## <u>VIOLATIONS OF TILA</u>
(15 USC § 1601 *et seq.* against TFCU)

40. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

41. Plaintiff's transaction as described in this Complaint was a consumer credit transaction within the meaning of TILA and Federal Reserve Board Regulation Z.

42. TFCU regularly extends, or offers to extend, consumer credit for which a finance charge is, or may be, imposed or which, by written agreement, is payable in more than four installments.

43. The Loan Agreement is a TFCU form, and the Loan Agreement provides on its face that the underlying debt is payable to TFCU.

44. TFCU is a "creditor" within the meaning of TILA and Regulation Z. *See* 15 U.S.C. § 1602(g)(1).

45. The Dealership and the Dealership's "Finance Manager" acted as TFCU's agent for the purpose of consummating the Loan Agreement so all statements made by the Dealership and/or the Dealership's "Finance Manger" during the transaction are imputed to TFCU.

46. The Loan Agreement lists a motor vehicle, an article of personal property, as collateral.

47. Plaintiff is a natural person and he purchased the Vehicle for personal, family, or household purposes. Plaintiff is therefore a "consumer" for purposes of entitlement to all disclosures required by TILA and with regard to entitlement to the Act's protections. *See* 15 U.S.C. § 1602(i) (specifying attributes of a consumer credit transaction).

48. The Loan Agreement is a written agreement payable in more than four installments.

49. The finance charges as indicated in the Loan Agreement exceed $1,000.00.

50. The Loan Agreement is a contract in which TFCU, as a creditor, commits to sell a natural person property primarily for personal, family, or household purposes, in which the total

amount financed is less than $50,000.  Consequently, the Loan Agreement constitutes a non-exempt "credit sale" for purposes of 15 U.S.C. §§ 1602(h) and 1603(3).

51. The Loan Agreement is inconsistent with oral disclosures made by TFCU's agent on the date of the transaction.

52. In violation of TILA and Regulation Z, the Loan Agreement materially misstates the finance charge for this consumer credit transaction.  See 15 U.S.C. § 1638(a)(3) (requiring disclosure of the finance charge in a consumer credit transaction).

53. The actual finance charge imposed by the Loan Agreement ($10,974.27) is above the finance charge disclosed by the Loan Agreement ($3,015.49).  As such, the materially misstated finance charge disclosed in the Loan Agreement does not fall within the range of allowable tolerances for purposes of TILA's disclosure requirements.  See 12 C.F.R. § 1026.18(d)(2).

54. In violation of TILA and Regulation Z, the Loan Agreement materially misstates the APR for this consumer credit transaction.  See 15 U.S.C. § 1638(a)(4) (requiring disclosure of a consumer credit transaction's APR).

55. The actual APR imposed by the Loan Agreement exceeds by more than one-eighth of one percent the APR disclosed in the Loan Agreement.  As such, the materially misstated APR disclosed in the Loan Agreement does not fall within the range of allowable tolerances for purposes of TILA's disclosure requirements.  See 15 U.S.C. § 1606(c).

56. For all these reasons, TFCU is liable under TILA and Regulation Z for statutory damages, actual damages, attorneys' fees, litigation expenses and costs, along with a declaratory judgment that it has violated TILA and Regulation Z.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF MVRISA
(N.Y. Personal Property Law § 301 *et. seq.* against all Defendants)

57. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

58. Plaintiff is a "retail buyer" within the meaning of MVRISA § 301(2).

59. The Dealership is a "retail seller" within the meaning of MVRISA § 301(3).

60. TFCU is a "retail seller" within the meaning of MVRISA § 301(3) acting through its agent, the Dealership, or alternatively, the assignee of the Dealership.

61. The transaction as described herein involved a "retail instalment sale" within the meaning of MVRISA § 301(4).

62. Pursuant to § 302(5), MVRISA incorporates all of TILA's disclosure requirements.

63. As set forth above, the TILA disclosures provided to Mr. Muller were materially misstated.

64. Plaintiff was not provided a contract identified as a "Retail Installment Contract," in accordance with MVRISA § 302(2)(a), either at the time of the sale or at any subsequent time.

65. The "NOTICE TO THE BUYER" disclosure required pursuant to MVRISA § 302(2)(c) was not provided at the time of sale or at any subsequent time.

66. Under MVRISA § 302(1) a motor vehicle retail installment contract is required to contain "all the agreements" between the parties.

67. As set forth above, no document received by Plaintiff contained all the agreements between the parties.

68. The Defendants' violations of MVRISA were willful.

8

69.  For all of the reasons stated herein, Plaintiff is required to recover from Defendants any credit service charge, delinquency, or collection charge he has paid as a result of this transaction. *See* MVRISA § 307.

70.  Plaintiff is also entitled to injunctive relief barring Defendants from henceforth violating MVRISA as set forth above.

**THIRD CAUSE OF ACTION**
**DECEPTIVE TRADE PRACTICES**
(N.Y. Gen. Bus. Law § 349 against all Defendants)

71.  Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

72.  Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

73.  To wit, wholly apart from any other violations of law recounted in this Complaint, the Defendants' acts and practices on behalf of themselves constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in this state, unlawful, independent of whether these acts and practices constitute violations of any other law.

74.  These deceptive acts and practices were committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

75.  Each of these actions were consumer oriented and involved misleading conduct that is recurring and has a broad impact upon the public or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

9

76. These false and deceptive consumer-oriented actions misrepresent the actual rights and obligations of consumers.

77. Specifically, upon information and belief, the Dealership routinely misrepresents the cost of automobiles for sale or lease, inducing customers to commit to purchase an automobile at a price that is later inflated through the sale of illusory warranties, phantom fees, and other charges, all of which hide the true cost of an automobile from members of the public.

78. Further, upon information and belief, acting as the agent of TFCU, the Dealership routinely misrepresents the cost of automobiles for sale or lease, inducing customers to commit to purchase an automobile at a price that is later inflated through the sale of illusory warranties, phantom fees, and other charges, all of which hide the true cost of an automobile from members of the public.

79. Upon information and belief, the Dealership routinely uses the digital signature process to hide the full cost of financed transactions from consumers.

80. Upon information and belief, acting as the agent of TFCU, the Dealership routinely uses the digital signature process to hide the full cost of financed transactions from consumers.

81. The Defendants' deceptive consumer-oriented actions and representations serve to convince consumers to commit to purchasing or leasing an automobile at a certain price, only to have that price drastically inflate afterwards.

82. Also, upon information and belief, Defendants' routinely misrepresents that their sales of automobiles comply with applicable law which causes consumers to enter into transactions with the false belief that they have received all necessary disclosures and notices.

83. In actuality, as set forth in this Complaint, the Defendants' standard form contracts and other documents do not comply with New York law and do not contain the consumer notices and disclosures required by law.

84. The Defendants' false and deceptive consumer-oriented actions result in Defendants receiving and retaining payments from transactions which consumers, and Plaintiff specifically, would not have entered if the true facts had been known.

85. The Defendants' conduct and statements, as described above, were materially misleading.

86. As a result of these violations of NYGBL § 349, Plaintiff suffered, and continues to suffer, pecuniary and non-pecuniary harm.

87. The Defendants' violations were willful, knowing, and committed in bad faith.

88. For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1,000, punitive damages, reasonable attorney's fees and costs pursuant to NYGBL §349(h), and declaratory judgment that the practices described above are deceptive as defined under § 349.

## FOURTH CAUSE OF ACTION
## FALSE ADVERTISING
(N.Y. Gen. Bus. Law § 350 against all Defendants)

89. Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

90. Under NYGBL § 350-a, "false advertising" is defined as

> advertising, including labeling, of a commodity… if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity…

11

to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

91. The Defendants' oral and written representations of the Vehicle's price, the features included within the price of the Vehicle, and the contents of the Loan Agreement, Used Vehicle Invoice, and Warranty were materially misleading and constitute false advertising pursuant to NYGBL § 350.

92. Defendants' false advertising was done knowingly, willfully and was committed in bad faith.

93. As a result of these violations of NYGBL § 350, Plaintiff – who would not have purchased the Vehicle but for the Dealership's false advertising – suffered actual damages as set forth herein.

94. For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), actual damages as set forth herein, three times the actual damages up to $10,000.00, punitive damages, and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
(Common Law Fraud against all Defendants)

95. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

96. As set forth above, the Defendants defrauded Plaintiff by, *inter alia*, overcharging Plaintiff for the Vehicle and by having Plaintiff sign an electronic tablet and affixing his signature to a fraudulent contract which he never had an opportunity to review.

97. Upon information and belief, the Defendants intended to deceive Plaintiff.

98. Plaintiff believed and justifiably relied upon the Defendants' representations. Plaintiff had no reason to know or expect that the documents to which his signature was affixed listed the grossly overinflated and incorrect Vehicle purchase price and loan amount.

99.     Had Defendants been truthful about the transaction's sales terms and the contents of the Loan Agreement, and had the Defendants not made these fraudulent misrepresentations, Plaintiff would have walked away and avoided the transaction entirely.

100.    As a result of such reliance, Plaintiff sustained actual damages (including both pecuniary and non-pecuniary damages).

101.    Moreover, the Defendants' conduct was egregious on every level, involving outright deception.

102.    As a result of Plaintiff's reasonable reliance upon the Defendants' misrepresentations, Plaintiff is entitled to actual damages as set forth above, punitive damages, and costs.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in its favor and grant the following relief:

### *On the First Cause of Action - Violations of TILA:*

Judgment in favor of Plaintiff and against TFCU for violating the Truth in Lending Act and Regulation Z awarding (a) statutory damages, (b) actual damages, (c) costs, and (d) reasonable attorneys' fees;

### *On the Second Cause of Action - Violations of MVRISA:*

Declaratory judgment against all Defendants that they have violated MVRISA, entry of an order enjoining Defendants from committing similar violations of MVRISA in the future, and awarding Plaintiff damages against Defendants in the amount of any credit service charge, delinquency, or collection charge Plaintiff has paid as a result of this transaction, as well as costs of the action;

### *On the Third Cause of Action - Deceptive Trade Practices:*

Judgment in favor of Plaintiff and against Defendants for actual damages, three times the actual damages up to $1,000.00, punitive damages, costs and reasonable

attorneys' fees and declaratory judgment that Defendants' acts and practices are deceptive;

*On the Fourth Cause of Action - False Advertising:*

Judgment in favor of Plaintiff and against Defendants for injunctive relief, actual damages, three times the actual damages up to $10,000.00, punitive damages, costs and reasonable attorneys' fees, and declaratory judgment that Defendants have engaged in false advertising and such other or further relief as the Court deems appropriate;

*On the Fifth Cause of Action - Common Law Fraud:*

Judgment in favor of Plaintiff and against Defendants for actual damages, exemplary and punitive damages, attorney's fees and costs.

*Any additional and further relief as may be deemed just and appropriate.*

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

Dated: July 6, 2020

> */s/ Evan S. Rothfarb*
> Evan S. Rothfarb
> Daniel A. Schlanger
> Schlanger Law Group LLP
> 80 Broad Street, Suite 1301
> New York, NY 10004
> T: 212-500-6114
> F: 646-612-7996
> E: erothfarb@consumerprotection.net
> E: dschlanger@consumerprotection.net
> *Counsel for Plaintiff*